THE BOARD OF EDUCATION OF DISTRICT No. **3,** etc.

*v.*

GOTLIEB NEIDENBERGER *et al.*

MECHANIC'S LIEN—*does not lie against school property.* The lien given by statute to a mechanic or material-man, for labor or materials furnished in the erection of a building, does not attach against property held for public school purposes.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was a petition filed by Gotlieb Neidenberger and J. George Gerding, partners composing the firm of Neidenberger & Co., against the Board of Education of District No. 3, in town. 3 north, range 8 west of the third principal meridian, for the enforcement of a mechanic's lien for materials furnished by petitioners, as sub-contractors of Wm. H. Phillips & Bro. On the hearing, the court below found a lien in favor

of the petitioners, for the sum of $1265, and required payment to be made in thirty days, with costs of suit, and in default thereof ordered sale of the school house and premises, in the usual form.

Mr. A. W. METCALF, for the appellant.

Messrs. IRWIN & KROME, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The only question we deem it necessary to consider in this case is, whether the law securing a mechanic's lien was intended to and does embrace contracts for building or repairing common school houses—whether the directors of a school district, legally organized, represent a body corporate or politic that falls within the meaning of a person, as defined by the statute.

The lien law gives to any person who, by contract with the owner of any tract of land or town lot, shall furnish labor or materials for the erection or repair of any house, etc., a lien on the whole tract of land or town lot, as therein provided. The first section of the act of 1869 gives to a sub-contractor, mechanic, workman, or other person who, in conformity with the terms of the contract with the owner or lessee of any lot or piece of ground, shall perform any labor or shall furnish any materials in building, altering, repairing, etc., of any building, etc., a lien, on the terms therein prescribed.

We shall first inquire whether the statute gives a lien on a school house, as against the directors, trustees or district, to the original contractor, as, if none is given to him it will hardly be contended that the sub-contractor can have a lien. If it was not intended by the General Assembly to subject such property to the lien of the mechanic or material-man, neither contractor or his sub-contractors would have any lien on such property.

All persons will see, at a glance, that the policy which dictated the passage of these laws was a desire to secure payment for materials furnished or labor performed in the construction of buildings, and their repair. This was the manifest object of the law. And it will be seen that the same object is accomplished in another mode by section 49, Laws 1857, page 278, which declares, that if judgment shall be obtained against any township board of trustees of schools or board of directors, the person entitled thereto shall have execution by the circuit court in which the judgment is recovered, or to which a transcript of the judgment is taken from a justice of the peace, by issuing a writ, commanding the directors, trustees and treasurer of such township to cause the amount thereof, with interest and costs, to be paid to the party entitled thereto, out of any unappropriated moneys of such township, or, if there be no such moneys, out of the first moneys applicable to the payment of the kind of services or judgment for which the recovery was had, and to enforce obedience to such writ by attachment, or by *mandamus*, requiring such board to levy a tax for the payment of the judgment.

Here is a sure and complete remedy given for the enforcement of all just claims against such bodies. The party has but to obtain his judgment, and, if there be money in the treasury, to obtain an order on the treasurer for its payment, and if there is no money applicable for its payment, then to obtain a writ of *mandamus* to compel the levy and collection of a tax for its payment. This proceeding is restrictive of the common law power to issue a *fieri facias* to collect the judgment. It is manifestly in restraint of that right, as it provides that execution shall be had in that mode, which, by fair and reasonable intendment, excludes the supposition that it was intended to be cumulative to the common law remedy, and was intended to be exclusive.

This is rendered obvious from the very nature and purposes of creating these incorporations. They are brought into existence to subserve a great public policy—to give to

every child of the State a common school education. And these bodies are created for the promotion of this great public interest, and they are clothed with such power only as will enable them to accomplish this public purpose. They are clothed with none of the usual powers that are granted to private corporations, nor were they authorized to enter into commercial pursuits, but simply to perform their duties to the public.

The education of the children in the State has been assumed as a duty devolving upon the government, and it has chosen the present school system as being the best adapted to that end; and these bodies are created to effectuate that policy, and are essentially as public as are municipal corporations. They are as much the instruments of government, and are as essential in carrying on its functions, as are cities, towns and villages.

It, therefore, follows, that a sound public policy would dictate to the law-making power that these bodies should not be liable to be destroyed, by having their houses and property sold for the payment of their debts. Hence the mode adopted, to have execution, and thus preserve their property, and at the same time give the creditor a sure and as efficacious a remedy as by *fieri facias.* In carrying out that policy, it never could have been intended to permit the houses and property to be sold and lost by a decree for a mechanic's lien, when such care was taken to prevent it from being sold under a *fieri facias.* It would, in every way, be opposed to the obvious policy of the law, in inaugurating and maintaining our school system. And in conformity to that obvious design, we are constrained to hold that a mechanic's or material-man's lien does not attach against property held for public school purposes. Such property, although the title is not vested in the State, still is held for public use, and was not intended to be sold, except in the mode prescribed by the school law.

We are, for these reasons, clearly of the opinion that the court below erred in rendering the decree, and it is reversed.

*Decree reversed.*